UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **LAURA JONES**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-02583-AGF |
| | ) |
| **CITY OF ST. LOUIS, MISSOURI, et al.**, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S TRIAL BRIEF

### I.   Current Posture

Plaintiff Laura Jones brought this action against four City of St. Louis police officers, alleging that the defendants used excessive force and improperly arrested her. The claims that remain before the court are the following:

- Count III: State law Negligent Infliction of Emotional Distress, against Defendants Timothy Turner, Jonathan Vanarsdale, Brian DeMatteis, and Joshua Hall (collectively, "Defendant Officers").

- Count IV: Excessive Force in violation of the Fourth and Fourteenth Amendments in under U.S.C. § 1983, against Defendant Officers.

- Count V: State law Battery, against Defendant Officers.

### II.   Undisputed Facts

On September 15, 2017, Plaintiff Laura Jones attended a protest about the police in downtown St. Louis. On that day, Defendant Officers were working as St. Louis City police officers. They were present on that day at the intersection of Tucker and Clark as a part of a police line. Ms. Jones was standing in middle of the intersection. At some point, these officers

advanced toward Ms. Jones. Ms. Jones fell to the ground and was arrested. Ms. Jones claims that the officers used excessive force against her in effectuating her arrest. The City of St. Louis declined to charge Ms. Jones with any charges related to her arrest.

### III.     Facts as Alleged by Plaintiff

On September 15, 2017, sixty-four-year-old Laura Jones heard about the verdict in the criminal trial against a former St. Louis Metropolitan Police Department ("SLMPD") officer. Plaintiff's Statement of Additional Facts, ("PSOUF"), ECF No. 75,  ¶ 1. After talking at lunch with several strangers who were affected by the verdict, Ms. Jones felt inspired to attend the protest she heard was underway downtown. PSOUF ¶ 2. After driving and parking downtown, Ms. Jones eventually located the protest. PSOUF ¶¶ 2-5. At the peaceful protest, Ms. Jones listened to a clergyman speak and engaged in some peaceful protest chants. PSOUF ¶ 6. After a while, Ms. Jones looked around and noticed a substantial police presence. She feared that the police would hurt, or even kill, someone. PSOUF ¶ 7.

Around 5:20 pm in the afternoon, Ms. Jones heard the police saying something over a loudspeaker, but she could not make out the words. PSOUF ¶ 8. Ms. Jones did not hear any orders to disperse or orders to move back. PSOUF ¶ 9. The environment grew tense. People were yelling, the police continued the unintelligible announcements, and a few people started throwing rocks. PSOUF ¶ 10. Protesters yelled for calm, as the protest was peaceful. PSOUF ¶ 11.

As Ms. Jones turned her head to try to make out what the officers were saying, she made eye contact with an unknown officer who is not a defendant. PSOUF ¶ 12. This officer looked at Ms. Jones with abject disgust before spraying her with pepper spray. PSOUF ¶ 13. Ms. Jones had done nothing wrong. PSOUF ¶ 14. She had committed no crimes. *Id.* She had not harmed officers

or anyone else. *Id.* Yet, she was pepper sprayed, leaving her crying out as her eyes burned more than she had ever thought possible. PSOUF ¶ 15. She could not see. *Id.*

Immediately after, Ms. Jones suddenly felt as though she had been plowed by a truck. Instead, Defendants Turner, Vanarsdale, and another officer rammed her with their bodies and shields, throwing her to the ground. PSOUF ¶ 16. Defendants claim that Ms. Jones simply "tripped." However, the photographic and video evidence establish that she was pushed by the team of Sgt. Turner, Officer Vanarsdale and an unknown officer. PSOUF ¶ 17. In a video captured by a local news station, while Sgt. Turner stands next to them attempting to grab Ms. Jones, Officers Vanarsdale and another officer very clearly use the shields to push Ms. Jones as she is turning away from them. *Id.*

Ms. Jones curled herself into a fetal position to protect herself. PSOUF ¶ 18. Blinded by the pepper spray and feeling officers' feet strike her again and again, Ms. Jones feared that officers would break her ribs or crush her skull. *Id.* She thought she was going to die. *Id.* Even though she was helpless and on the ground, Defendant DeMatteis callously shoved his shield on top of Ms. Jones. PSOUF ¶ 19. He then continued to use excessive and unnecessary force to smash her body into the pavement. *Id.* In doing so, DeMatteis applied the full weight of his body on her. *Id.* After Defendant DeMatteis eventually stopped smashing Ms. Jones into the pavement, he and Defendant Hall stepped on and kicked Ms. Jones's body as they walked over her. *Id.* All of this was avoidable and was done intentionally. Eventually, officers picked her up and arrested her. PSOUF ¶ 21. Ms. Jones suffered from nearly 24 hours of the City of St. Louis's inhumane incarceration until she was released. PSOUF ¶¶ 22-25.

Before September 15, 2017, Ms. Jones was already in treatment for complex post-traumatic stress disorder, anxiety, and depression. PSOUF ¶ 29. Following her assault, Ms. Jones's mental

health deteriorated considerably. *Id.* For the first month following the protest, Ms. Jones had nightmares, and she was unable to concentrate. PSOUF ¶ 30. She stayed in her apartment, too afraid to venture out. *Id.* She had several panic attacks when reminded of her arrest, including while substitute teaching. *Id.* This resulting in her losing her job. *Id.* Her mental health continued to deteriorate. PSOUF ¶ 31. In April 2018, she decided to get a fresh start by moving to Michigan to help her mother and to put space between her and the SLMPD. *Id.* That did not help. *Id.* Even in Michigan, she just stayed in her apartment for months. *Id.*

The trauma Ms. Jones suffered at the hands of the Defendant officers continues to haunt her. PSOUF ¶ 32. She continues to have panic attacks when she sees police. *Id.* Ms. Jones seeks compensation for these damages that she has suffered at the hands of Defendant Officers.

**IV.   Factual Issues**

    a.   Whether Defendant Officers drove Ms. Jones to the ground in an act of excessive force.

    b.   Whether Defendant Officers followed SLMPD policies regarding the arrest and handling of non-violent protestors.

    c.   Whether the actions of Defendant Officers in striking Ms. Jones with their shields was necessary as she was curled in the fetal position on the pavement.

    d.   Whether the actions of Defendant Officers in kicking and stepping on Ms. Jones with was necessary as she was curled in the fetal position on the pavement.

    e.   Whether Defendant Officers used excessive force against Ms. Jones.

    f.   Whether the Defendant Officers committed negligent infliction of emotional distress against Ms. Jones.

    g.   Whether the Defendant Officers committed battery against Ms. Jones.

      h.      The amount of damages suffered by Ms. Jones as a result of the above.

      i.      Whether Ms. Jones is entitled to punitive damages.

### V. Legal Standards

The Fourth Amendment prohibits unreasonable "seizures" of the person. *Blazek v. Santiago*, No. 3:11-CV-00026-RAW, 2012 WL 12140584, at *7-8 (S.D. Iowa Oct. 23, 2012*), aff'd sub nom. Blazek v. City of Iowa City*, 761 F.3d 920 (8th Cir. 2014) (citing *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989); *see also McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003). "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *Id.* (citing *McCoy*, 342 F.3d at 846).

"[T]he right to be free from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against searches and seizures." *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Blazek*, 2012 WL 12140584, at *8 (citing *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005)). "The reasonableness of a particular use of force depends on the circumstances of each case, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (citing *Shannon v. Koehler*, 616 F.3d 855, 862 (8th Cir. 2010) (quotations omitted).

Under Missouri state law, a battery is an intended, offensive bodily contact with another. *Geiger v. Bowersox*, 974 S.W.2d 513, 516 (Mo. App. E.D. 1998) A law enforcement

officer making an arrest is liable for assault and battery when he uses more force than is reasonably necessary in order to effectuate the arrest. *Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. App. E.D. 1987). The elements of a claim for negligent infliction of emotional distress are: "(1) a legal duty of the defendant to protect the plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff." *Henson v. Greyhound Lines, Inc.*, 257 S.W.3d 627, 629 (Mo. Ct. App. 2008), quoting *Thornburg v. Fed. Express Corp.,* 62 S.W.3d 421, 427 (Mo.App. W.D.2001).

Public employees are not entitled to official immunity for acts of negligence committed during the course of their official duties where those acts were done in bad faith or with malice. *Blue v. Harrah's N. Kansas City*, LLC, 170 S.W. 3d 466, 479 (Mo. App. W.D. 2005) (finding highway patrolman not entitled to official immunity where plaintiff put forth evidence of "conscious wrongdoing" by officer); *see also Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Schooler v. Arrington*, 81 S.W. 468 (Mo. App. KC. 1904); *Rozell v. Stiefermann*, 726 S.W.2d 342, 343-344 (Mo. App. W.D. 1987

VI. **Plaintiff's Legal Contentions:**

    a.    The use of force by Defendant Officers violated Plaintiff's constitutional rights.

    b.    Defendant Officers battered Plaintiff in violation of Missouri state law.

    c.    Defendant Officers negligently inflicted emotional distress upon Plaintiff in violation of Missouri state law.

    d.    Plaintiff is entitled to actual and damages.

    e.    Plaintiff is entitled to attorneys' fees and costs.

**VII.     Anticipated Substantive or Procedural Problems**

Plaintiff does not anticipate any substantive or procedural problems when introducing her own evidence, nor with Defendants' evidence other than what will be addressed in motions *in limine*.

Dated:  November 22, 2022                    Respectfully submitted,

**KHAZAELI WYRSCH LLC**

/s/ Javad M. Khazaeli
Javad M. Khazaeli, 53735MO
James R. Wyrsch, 53197MO
John M. Waldron, 70401MO
911 Washington Avenue, Suite 211
St. Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
javad.khazaeli@kwlawstl.com
james.wyrsch@kwlawstl.com
jack.waldron@kwlawstl.com

**CAMPBELL LAW LLC**
Alicia Campbell, 59586MO
John Campbell, 59318MO
3470 S. Jefferson
St. Louis, Missouri 63114
alicia@campbelllawllc.com
john@campbelllawllc.com

***Attorneys for Plaintiffs***

7